SARTAIN, Judge.
Plaintiff Carlysle suffered personal injuries as a result of an explosion and flash fire on May 1, 1967, in the rental house owned by defendant Philip Burns. The explosion occurred during or immediately following the filling of an outdoor butane gas tank by an employee of defendant Tu-loma Gas Products Company. Apparently, some gas escaped through an uncapped gas pipe or outlet inside the house and was ignited by a spark or flame, although the exact source thereof was not determined. Also joined as defendant were Hartford Insurance Company, as insurer of Burns, Aetna Insurance Company, as insurer of Tuloma Gas Products, and Burns Furniture Company, which allegedly installed or removed the gas appliances and was allegedly responsible for leaving an outlet uncapped. The action against the Burns Furniture Company was dismissed and is not contested on appeal.
Although the trial judge stated that the landlord was probably negligent in failing to inspect the premises before Carlysle moved in and that the failure of the Tu-loma Gas Products employee to inspect the system before turning on the gas could constitute negligence per se, the judge held that Carlysle’s failure to inspect the system constituted contributory negligence which barred his claim against all defendants. The finding of contributory negligence under the facts of this case was, in our opinion, erroneous and for reasons hereinafter stated we reverse the judgment of the trial court.
The record reveals that Mr. Carlysle and his family moved into the house on Saturday and Sunday, April 29 and 30, 1967, after paying Mr. Burns a rent deposit. At that time the house had been vacant for five or six months and there was no gas or electric service in operation. On Sunday night, they contacted Joseph Hulin, who delivered gas for Tuloma Gas Products, and requested a delivery. Hulin arrived at the house about 7:00 a. m., Monday, May 1, 1967, and at Carlysle’s request he began to put fifty gallons of gas in the tank outside. Carlysle went back into the house and a few minutes later, as he was walking out of the bathroom, the explosion and fire occurred and Carlysle’s face, arms and feet were burned. Some clothing and furniture were also lost.
Mr. Hulin testified that when he arrived, he asked Carlysle if “everything was O.K.” and Carlysle answered in the affirmative. After filing the tank, he said he turned on the gas at Carlysle’s request. When the explosion occurred, he heard Carlysle shouting so he turned off the gas and went inside to put out the fire. It was later discovered that a pipe or outlet was uncapped and that the escaping gas had apparently been ignited in some way.
The plaintiff’s action against the owner-lessor, Philip Burns, is based on La.Civil Code Article 2695, which reads as follows:
“The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to *67 the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
We have no hesitation in finding that an uncapped gas pipe would prevent the lessee from using the premises and that such a condition is a vice or defect within the meaning of Article 2695. The cases interpreting that Article have never established an affirmative duty requiring the lessee to inspect the premises for defects not readily apparent. On the contrary, the issue of contributory negligence is not even considered unless it is shown that the lessee knows of the vice or defect and even then it must appear that the premises could not reasonably be used in safety. Harrell v. Johnson, 242 So.2d 648 (1st La.App., 1970) and cases cited therein.
Clearly, if Mr. Carlysle had actually known of the uncapped pipe, his actions in having the gas delivered and turned on would have constituted negligence because it could hardly be argued that such actions would not be imminently and apparently dangerous. But there is no evidence that Mr. Carlysle knew of the dangerous condition. Under the clear language of Article 2695, the defendant Philip Burns has failed to comply with his obligation to Mr. Carlysle to provide premises free from vices and defects and Carlysle’s mere failure to discover the uncapped pipe is not negligence on his part.
However, we do not think that Mr. Burns, as lessor, is ultimately responsible for Carlysle’s injuries. The plaintiff’s action against Tuloma Gas Products Company is based on the following section of the Rules and Regulations of the Louisiana Liquefied Petroleum Gas Commission, which volume is in the record:
“5.14 Transfer of Liquids
******
(g) Inspection of Old System: Where an installed system has not been in use for some time, the dealer must INSPECT ALL LINES to see that they are connected to the appliances or that any openings are properly capped or plugged before filling the tank.”
We also note the following provisions in the same section:
“(h) Must Not Serve Illegal Installations: Bonded dealers must NOT SERVE any liquefied petroleum containers INSTALLED ILLEGALLY in the State of Louisiana or posted by the Louisiana Liquefied Petroleum Gas Commission. Ignorance will not be accepted as an excuse, as it is the duty of the dealer to investigate before serving any doubtful liquefied petroleum gas container.
“(i) Must Not Serve Improperly Installed System: Bonded dealers must NOT SERVE any liquefied petroleum gas system which, upon investigation, is found to be IMPROPERLY INSTALLED or which is in a dangerous condition.”
 Mr. Hulin, who delivered the gas, did not go inside the house before filling the tank. This omission is a clear violation of Section 5.14(g),- supra. The fact that an officer of Tuloma Gas Products testified that it was not customary to comply with the mandatory inspection requirement is, if not incriminating, immaterial. In the case of Home Gas & Fuel Co. v. Mississippi Tank Co., 246 La. 625, 166 So.2d 252 (1964), the Supreme Court found that a violation of these Rules and Regulations constituted actionable negligence per se, if the violation was the proximate cause of an accident resulting therefrom.
If plaintiff Carlysle’s failure to inspect the gas lines in the instant case is negligence which bars his action against the gas company, Section 5.14(g) is rendered meaningless, except perhaps for any disciplinary sanctions the commission might choose to impose against the dealer. We are convinced that these Rules and Regulations were adopted for the protection of *68 customers and their premises and not merely for internal regulations within the gas business. Certainly, the language of Section 5.14(h) and (i), supra, supports this interpretation.
Furthermore, we are convinced that the mandatory inspection requirement places the ultimate responsibility on the more knowledgeable gas dealer to insure that the system and premises may be used in safety, without regard to whether the occupant is the owner or lessee. By way of example, if Mr. Carlysle had not been injured in this case but the house had burned down, Mr. Burns would be protected by Section 5.14(g) for the loss of the house.
We have been referred to the case of Geismar v. General Gas Corporation, 182 So.2d 769 (1st La.App., 1966), where the escaping gas and resulting explosion were caused by a malfunction of a pressure regulator inside the premises and owned by the homeowner. The homeowner was not allowed to recover because he was charged with the duty of maintaining and inspecting his own equipment and the gas company was not shown to have violated any duty. In that case, the system had been in service at the time of the routine delivery of gas and the court found no duty on the part of the gas company to inspect. The Commission Rules and Regulations were not even mentioned in that decision and, indeed, since the system had been in use, Section 5.14(g) would not have been applicable. The instant case is distinguishable on that basis. The inspection required by Section 5.14(g) can only be intended to protect the customer from possible defects in his system and clearly contemplates the situation where the system has been out of use and has become unsafe through the customer’s negligence or lack of use. We therefore hold that Tuloma Gas Products Company, through the negligence of its employee Joseph Hulin, and Aetna Insurance Company are ultimately and solely liable for the damages sustained by Mr. Carlysle in this case.
Lastly, we turn to the question of quantum. Having disallowed recovery, the trial judge gave no indication of the amount of damages that might have been proper.
One element claimed by plaintiff involved the loss of clothing and furniture in the explosion and fire. However, there is not a single estimate in the testimony as to the value thereof and that claim must be regarded as not proven.
The plaintiff also claims loss of wages and shows that he had been earning $80.-00 per week prior to the accident. His petition prays for recovery for thirteen weeks at that rate, or a total of $1,040.00. The evidence is clear that he was unable to work during this period and that claim will be allowed.
Plaintiff was treated for his physical injuries at the Washington-St. Tammany Charity Hospital in Bogalusa, apparently free of charge since no bills for medical expenses were introduced in evidence. Hospital records showed that he was hospitalized for about two and one half weeks, through May 18, and was seen on an out-patient basis through July 31, 1967. He was treated for first and second degree burns in the areas of his face, arms and feet. The treatment consisted primarily of many applications of a silver nitrate solution, therapeutic baths, bandage changes and the administration of drugs to ease the attending pain.
Mr. Carlysle testified that for some time after his discharge from the hospital his feet were irritated and continued to crack and bleed, which caused him considerable pain and discomfort.
The testimony of Dr. Vernon Kroll was introduced by deposition and showed that he had examined the plaintiff in November of 1967 and in September of 1969. At the first examination, Dr. Kroll found scars from first and second degree burns on the hand, wrists, feet and right lower leg. The *69 burns had healed without grafting. Plaintiff felt tightness on stretching his feet and ankles in all directions. Dr. Kroll estimated his disability at that time to be 5% to 8% of his whole body. On the subject of pain, Dr. Kroll testified that first and second degree burns can initially be more painful than third degree burns, since the pain receptor fibers are destroyed by a third degree burn and numbness results.
Following his examination in September of 1969, Dr. Kroll was of the opinion that plaintiff had reached maximum recovery. He stated that the only residual effects consisted of some scar formation on both wrists extending to the forearm. However, his principal residual consisted of “some thickness and scar formation in both feet, * * * with still some area of discoloration and some slight degree of scaling” on the date of the examination. The doctor further opined that plaintiff might suffer itching or burning of the feet “if he would wear ill fitting shoes or socks that become soggy or damp or rub”.
We are of the opinion that an award of $5,000.00 will adequately compensate plaintiff for the injuries sustained by him.
Accordingly, for the above and foregoing reasons, the judgment of the lower court is reversed and set aside and judgment is rendered herein in favor of the plaintiff Warren Carlysle for personal injuries and loss of wages and against defendants Tuloma Gas Products Company and Aetna Insurance Company, jointly and in solido, in the amount of Six Thousand Forty and No/100 ($6,040.00) Dollars, together with legal interest thereon from the date of judicial demand until paid. That portion of the lower court judgment dismissing the action against defendants Philip Burns, Burns Furniture Company and The Hartford Insurance Company is affirmed. All costs are to be borne by defendants Tuloma Gas Products Company and Aetna Insurance Company.
Reversed and rendered.